## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRISION K. WEXNER,<br><br>and<br><br>HANNAH K. WEXNER,<br><br>and<br><br>DAVID K. WEXNER,<br><br>and<br><br>SARAH K. WEXNER,<br><br>      Plaintiffs,<br><br>v.<br><br>WOLLMUTH MAHER & DEUTCH LLP,<br><br>and<br><br>BRAD J. AXELROD,<br><br>      Defendants. | Case No.  1-24-cv-6598<br><br>**COMPLAINT**<br><br>**Demand for Jury Trial** |

## <u>INTRODUCTION</u>

Plaintiffs Harrison Wexner, Hannah Wexner, David Wexner, and Sarah Wexner are beneficiaries to Non-Party the Linden West Trust ("Linden West" or the "Trust"), to whom Defendants Wollmuth, Maher & Deutsch LLP ("Wollmuth Law Firm") and Brad J. Axelrod ("Attorney Axelrod") owed a fiduciary duty, including a duty of utmost loyalty and care, as counsel to Linden West and to former Linden West trustee, the late Dennis Hersch.[1]  They breached that duty by:

---

[1]     Plaintiffs are referred to collectively hereinafter as "Plaintiffs," or "the Beneficiaries."

(1) Representing interests in conflict with those of the Beneficiaries, including Dennis Hersch in his individual capacity, without providing notice to, or securing a written waiver from, Linden West; (2) placing Dennis Hersch's individual interests above those of Linden West and the Beneficiaries; (3) placing their personal and financial interests above those of the Beneficiaries by charging Linden West attorneys' fees for legal services that exclusively benefitted Dennis Hersch in his individual capacity, without any prior notice, disclosure or approval; (4) shortly before Dennis Hersch's death, drafting and advising Linden West on the execution of an agreement the sole purpose of which was to benefit Gregory Hersch ("Greg Hersch") to the detriment and expense of Plaintiffs; and (5) attempting to prevent Plaintiffs from learning the full extent of their wrongdoing by withholding, and upon information and belief in other instances, erasing, Trust records held by Dennis Hersch. Defendants also unreasonably delayed the production of the Wollmuth Law Firm's client file.

Dennis Hersch, as a fiduciary to Linden West, permitted his son, Greg Hersch's financial advisory company, Florence Capital Advisors, LLC ("Florence"), also a fiduciary, to make certain investments on behalf of the Trust. Greg Hersch and Florence, ignoring their fiduciary duties, invested tens of millions of dollars of Linden West's funds in risky investments with little or no due diligence.

This misconduct included Florence's investment of $33+ million of Linden West's funds in FF Fund I LP ("FF Fund"). As the U.S. Attorney has explained, the FF Fund proved to be a $40 million securities fraud scheme, and its general partner, Andrew Franzone ("Franzone") – a longtime friend of Greg Hersch – was indicted by federal authorities and is now awaiting trial. According to the U.S. Attorney, Franzone falsely promised "his clients access to his successful liquid trading strategy and consistent, positive trading returns." In reality, "Franzone lied about

his fund's investments and performance, and he lied in promising clients that they had could readily access their invested capital. While his investors lost money, Franzone enriched himself."[2]

But Franzone was not the only one withholding the truth from Linden West. The SEC later sanctioned Greg Hersch and Florence for serving as an undisclosed dual agent on behalf of the FF Fund – receiving up to $40,000 a month for soliciting investments for the FF Fund – while at the same time advising clients to whom Greg Hersch owed an independent duty of loyalty, like Linden West, to heavily invest in and then not redeem from the FF Fund. This conflicted arrangement allowed him to secretly collect fees on both sides of the deal.[3]

Notwithstanding its breach of fiduciary duty to Linden West, Florence sued Linden West for breach of contract seeking fees for its services in an action captioned Florence Capital Advisors, LLC v. Zeiger, Case No. 24-cv-01094-JHR, U.S. District Court for the Southern District of New York, which is currently pending before the Hon. Jennifer H. Rearden (the "Florence Capital Action"). Matt Zeiger, the current trustee to Linden West, has filed counterclaims and a third-party complaint on behalf of the Trust against Florence, Greg Hersch, the Wollmuth Law Firm, and Attorney Axelrod in that action. The *instant* action, however, concerns the Wollmuth Law Firm's and Attorney Axelrod's breach of fiduciary duties of loyalty and care as owed to Plaintiffs, as Linden West's beneficiaries.

Attorney Axelrod was a family friend to the Hersches. Starting in August 2019, Dennis Hersch engaged Attorney Axelrod and the Wollmuth Law Firm to represent Linden West in legal

---

[2]     See Department of Justice Press Release, "Co-Founder of Hedge Fund Charged with $40 Million Securities Fraud Scheme," April 23, 2021, available at https://www.justice.gov/usao-sdny/pr/co-founder-hedge-fund-charged-40-million-securities-fraud-scheme (last accessed 8/27/24).

[3]     As detailed in the SEC Sanction Order, the SEC censured both Greg Hersch and Florence; ordered them both to refrain from committing or causing violations and future violations of Section 206(2) of the Investment Advisers Act of 1940; and imposed a $200,000.00 penalty. See In the Matter of Florence Capital Advisors, LLC and Gregory A. Hersch, SEC Order, September 29, 2023, available at https://www.sec.gov/files/litigation/admin/2023/ia-6450.pdf (last accessed 8/27/24).

actions against the FF Fund seeking redress for Franzone's misconduct. Yet, in December 2020, Defendants inexplicably abandoned Linden West's $33 million claim against the FF Fund in the FF Fund's bankruptcy proceedings. Worse yet, Defendants charged Linden West legal fees for their continued work in the bankruptcy proceedings on behalf of Dennis Hersch as an *individual creditor* to the FF Fund – even though the Trust itself no longer had any interest in the FF Fund.

Nor was the bankruptcy action the only instance of improper billing. Compounding Linden West's multi-million dollar losses, Attorney Axelrod used the Trust's assets as a war chest in other litigation – including to fund one action filed solely on behalf of Dennis Hersch individually, and another action that was little more than a thinly-veiled effort to clear Greg Hersch's name from his sordid involvement with the FF Fund.

Defendants' habit of utilizing Trust assets for services rendered to the Hersches extended beyond litigation, too. For example, while acting for Dennis and Greg Hersch's benefit, and ignoring his fiduciary duties to Linden West and Plaintiffs, Attorney Axelrod drafted an agreement requiring Linden West to pay Florence additional incentive fees on a potentially lucrative investment. Tellingly, Attorney Axelrod strategically backdated the agreement by two years to make it appear as if the promise to pay extra fees had been in place all along – though, in fact, it had never existed. Unsurprisingly, Defendants charged Linden West for drafting this agreement, essentially billing the Trust for the privilege of further enriching Greg Hersch. On top of that, Attorney Axelrod then adopted another conflict of interest by representing Greg Hersch in discussions with Linden West concerning that same agreement.

And Defendants' betrayal of Linden West's Beneficiaries did not stop there. In January 2022, Dennis Hersch passed away and Zeiger was appointed as successor trustee of Linden West. Numerous attempts were made to recover Dennis Hersch's work files and computer, but Greg

Hersch and the Wollmuth Law Firm, specifically through Attorney Axelrod, stalled their production for months.  No paper files were ultimately produced (despite Dennis Hersch's assistant stating that 20-plus file boxes were moved to the Hersch residence after his New York office closed).  And the files on Dennis Hersch's computer had been sanitized.

In sum, Defendants repeatedly violated their own fiduciary duties to Plaintiffs, while also colluding with, and intentionally facilitating those by Dennis and Greg Hersch.  What follows is based on the information Plaintiffs have recovered to date notwithstanding Defendants' likely withholding and possible spoliation of other Trust records.

**The Parties and Relevant Non-Parties**

1.      Plaintiffs Harrison Wexner, Hannah Wexner, David Wexner, and Sarah Wexner are beneficiaries to Non-Party Linden West, a New York trust ("Linden West" or the "Trust").  Hannah and Sarah Wexner are residents of Ohio.  Harrison and David Wexner are residents of California.

2.      As admitted in its answer to the third-party complaint filed against it in the related Florence Capital Action, Defendant the Wollmuth Law Firm is a New York limited liability partnership with its principal place of business in New York, New York.

3.      As admitted in his answer to the third-party complaint filed against him in the related Florence Capital Action, Defendant Attorney Axelrod is a resident of New York.  At all relevant times, Attorney Axelrod was a partner of the Wollmuth Law Firm and acted within the course of his agency for, and with, the Wollmuth Law firm.  Upon information and belief, Attorney Axelrod maintained a personal relationship with Dennis Hersch prior to Dennis Hersch's death and continues to maintain a personal relationship with Greg Hersch. Upon information and belief, Attorney Axelrod also represented Dennis and Greg Hersch and, as explained above, did so in

conflict with, or against, Linden West and thus acted adversely to the Trust's interests and the Plaintiff's interests.

4.      Non-Party Florence is a New York limited liability company, with its principal place of business in New York, New York.

5.      Upon information and belief, Non-Party Greg Hersch is a resident of New York. He is the founder, sole owner, and Chief Executive Officer of Florence.  Greg Hersch is the son of Dennis Hersch, who is now deceased.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants reside in this District and a substantial part of the events giving rise to this claim were performed by the Wollmuth Law Firm and Attorney Axelrod in New York.

## Factual Allegations

**A.      Dennis Hersch Becomes Linden West's Trustee And Owed The Plaintiffs A Fiduciary Duty.**

8.      In 2008, Dennis Hersch became trustee of Linden West, and he continued in that capacity until his death on January 18, 2022.  As a trustee, Dennis Hersch owed a fiduciary duty to Plaintiffs. These fiduciary duties included duties of care, loyalty, good faith, prudence, and disclosure.  Dennis Hersch was to always act in the Plaintiffs' best interest.  Unfortunately, Dennis Hersch ultimately did not do so given his conflict of interest in engaging Florence, which was owned by his son, Greg Hersch.  Acting adverse to the Trust and to Plaintiffs, Dennis Hersch acted

for the economic benefit and gain of himself and his son and therefore acted outside the scope of his agency.

9.      The same is true for Attorney Axelrod and the Wollmuth Law Firm.  They acted adversely to Linden West for Florence and Dennis and Greg Hersch's benefit, protection, and promotion by committing, as well as aiding abetting, the misconduct outlined herein.

**B.      Despite His Fiduciary Duty To Plaintiffs, Dennis Hersch Engages Greg Hersch As An Investment Advisor To The Trust, Despite Knowing Of Greg's Conflict Of Interest.**

10.     Upon information and belief, in 2015, Greg Hersch formed Florence and did so in anticipation of transacting business with Franzone.  According to the SEC Sanction Order, Florence entered an advisory agreement with the FF Fund in December 2015.  Under that agreement, Florence would provide investment consulting and manager due diligence services to the FF Fund, and, in return, FF Fund paid Florence a fee based upon the value of certain assets under management.  Upon information and belief, Greg Hersch disassociated from UBS Financial Services Inc. in or about September 2015, prior to Florence entering into the advisory agreement with the FF Fund.

11.     Upon information and belief, the FF Fund engaged Florence with the specific understanding and expectation that Florence and Greg Hersch would identify, solicit, and secure investment dollars into the FF Fund.

12.     Florence and Greg Hersch then sought out investment dollars from Linden West. On December 3, 2015, Linden West, through Dennis Hersch, executed a Discretionary Wealth Management Agreement with Florence, his son Greg Hersch's financial advisory firm, appointing Florence as an Investment Advisor (together with all amendments, the "DWMA").

13.    The DWMA was amended several times, including for the purpose of increasing the fees that Florence (and in turn, Greg Hersch) earned when it recommended an investment.

14.    Both federal and state law imposed an affirmative obligation upon Florence and Greg Hersch, as registered investment advisors for Linden West, to act as fiduciaries for the Trust and Plaintiffs as beneficiaries. These fiduciary duties included duties of care, loyalty, good faith, prudence, and disclosure.  Florence and Greg Hersch were to always act in the Plaintiffs' best interest and disclose all material information.

15.    With the execution of agreements with both the FF Fund and clients, Florence attempted to receive payments from both sides of an investment transaction even though it owed a fiduciary duty to each. The FF Fund, of course, knew of its engagement of Florence and, further, knew of the Florence engagement by customers.  Linden West, the Plaintiff-Beneficiaries, and other customers, however, were unaware of the FF's Fund's engagement of Florence.  This is detailed in the SEC Sanction Order.

16.    Florence and Greg Hersch advised Linden West on several private investments over the ensuing years.  However, Florence and Greg Hersch did not disclose the illicit payment scheme outlined in the SEC Order and/or the impermissible dual agency, which was only revealed in late September 2023 when the SEC issued its order.

### C.    The Hersches And Florence Direct Linden West To Invest Heavily In The FF Fund.

17.    As Trustee of Linden West, from 2008 to 2022, Dennis Hersch made numerous investments on behalf of Linden West, each ranging in size from approximately $500,000 to several million dollars.

18.    Greg and Dennis Hersch, on behalf of Linden West, invested over $33 million of Linden West's assets in the FF Fund.

19.     The FF Fund purported to be an opportunity for investors to invest in a highly liquid hedge fund trading in preferred securities and options that would achieve a balanced and predictable quarterly income stream.  According to the U.S. Attorney, the FF Fund represented to investors that its "fundamentals and trading characteristics" in trading included capital structure, coupon size, liquidity and trade execution, directional short positions and current income trading strategies with only a small portion of the FF Fund being invested in private/non-exchange traded investments to minimize the portfolio's overall volatility.

20.     Linden West's investment in the FF Fund was not only an abnormally large amount of money but also accounted for over 68% of the entire capital invested in the FF Fund.

21.     Notably, at the same time he and Florence arranged for Linden West's substantial investments in the FF Fund, Dennis Hersch was also personally investing in the FF Fund. According to a complaint filed by the Wollmuth Law Firm and Attorney Axelrod on behalf of Dennis Hersch in his individual capacity, see paragraphs 39 to 44, infra, Dennis invested approximately $1.1 million in the FF Fund, purchasing limited partner interests through his individual retirement account between approximately 2012 and 2014.

**D.     Greg Hersch's Friend, Franzone, Fraudulently Induces Others To Invest $40 Million In The FF Fund.**

22.     Unbeknownst at the time to Linden West's settlor and to the Beneficiaries, the FF Fund was run by Greg Hersch's childhood friend, Andrew Franzone. This fact was not properly disclosed by either Greg Hersch or Florence.

23.     Greg Hersch was so close with Franzone that Hersch named Franzone as the manager of several special purpose funds (SPVs) bearing the Florence Capital name.

24.     Florence had an affirmative obligation to monitor the FF Fund's performance, but Florence and Greg Hersch failed to disclose Linden West's position as the principal investor in the FF Fund.  Linden West learned of this with its receipt of the SEC Sanction Order.

25.     Under Florence's watch, Franzone is reported to have stolen from the FF Fund and invested in numerous illiquid investments.  According to the U.S. Attorney, Franzone's representations about the FF Fund's strategy, liquidity, and performance were largely fabricated. Instead of engaging primarily in preferred securities and options trading that ensured the FF Fund's liquidity, Franzone instead diverted more than 80% of the FF Fund's capital to high-risk, illiquid private investments, many of which were either worthless or significantly impaired. Franzone misappropriated the FF Fund's assets to fund his own personal business interests, including the purchase of an airplane hangar, and lied to investors about the FF Fund's performance and assets under management.

26.     Franzone was later indicted for securities fraud and wire fraud for his role in a scheme to fraudulently induce investors to invest approximately $40 million in his fund by, among other things, lying about the FF Fund's investment strategy, liquidity, and amount of assets under management.  See Indictment, United States v. Franzone, Case No. 21-cr-446 (VSB) (S.D.N.Y. July 8, 2021).

27.     The complaint filed in support of the arrest warrant issued against Franzone included a description of "Wealth Manager" Florence and Greg Hersch's efforts to solicit and recruit additional investors to the FF Fund, including Linden West.

28.     Franzone is currently awaiting his criminal trial.

29.     Linden West suffered $33 million in losses as it was the principal investor in the FF Fund.

**E.      Dennis Hersch Discloses Linden West's Losses – But Not Florence's Two-Sided Relationship With The FF Fund.**

30.      In July 2019, Dennis Hersch orally disclosed to Linden West's settlor's wife that Linden West's $33 million investment in the FF Fund was worthless. He claimed that Franzone had supposedly duped Greg Hersch into believing that the FF Fund would be comprised of liquid investments when, in fact, the investments held in the fund were illiquid. It was at this time that Dennis Hersch first disclosed that Greg Hersch and Franzone were lifelong friends.

31.      However, no one disclosed to Linden West or Plaintiffs that Florence and Greg Hersch were receiving compensation from the FF Fund and acting as dual agents.

**F.      The Wollmuth Law Firm And Attorney Axelrod Affirmatively Assume A Fiduciary Duty To Plaintiffs By Representing Linden West In Litigation Against Franzone And The FF Fund.**

32.      Based upon Greg Hersch's and Dennis Hersch's representations about Franzone's misconduct, in August 2019, Linden West brought an action, through the Wollmuth Law Firm and Attorney Axelrod, against the FF Fund to, in part, dissolve and liquidate the FF Fund and remove Franzone (the "2019 Delaware Action").

33.      The Wollmuth Law Firm and Attorney Axelrod identified Dennis Hersch "solely in his capacity as Trustee" to Linden West as the plaintiff in the 2019 Delaware Action.

34.      As counsel to Linden West and to Dennis Hersch as trustee for Linden West, the Wollmuth Law Firm and Attorney Axelrod owed certain fiduciary duties to the Plaintiffs, including the same duty of undivided loyalty, care and utmost good faith that Dennis Hersch himself owed to Plaintiffs.

35.      As part of this fiduciary duty, the Wollmuth Law Firm and Attorney Axelrod were prohibited from placing or advancing their own self-interest, be it personal or financial, above that of Plaintiffs, or to the detriment of Plaintiffs.

11

36.    Defendants were also bound by a duty of honesty, requiring them to affirmatively disclose potential conflicts of interest, whether brought about as a result of Defendants' advancement of their own self-interest, or as a result of representing a client with a differing, or materially adverse, interest.  This duty also required Defendants to disclose Dennis Hersch's fiduciary breaches, including where Defendants assisted in those breaches.

37.    On September 24, 2019, the FF Fund filed for Chapter 11 bankruptcy.  The FF Fund's bankruptcy automatically stayed proceedings in the 2019 Delaware Action.

38.    On February 3, 2020, as part of the bankruptcy process, the Wollmuth Law Firm and Attorney Axelrod filed a proof of claim for Linden West in the amount of $33,695,434.86.

**G.    The Wollmuth Law Firm And Attorney Axelrod Begin Charging The Trust For Services Rendered To Dennis Hersch In His Individual Capacity.**

39.    On October 28, 2020 – with the bankruptcy action still pending – the Wollmuth Law Firm and Attorney Axelrod filed a complaint on behalf of Dennis Hersch ***in his individual capacity*** against Franzone and the FF Fund's sole general partner, FF Fund Management LLC, in this District.  See Hersch v. Franzone et al., Case No. 1:20-cv-09047-ER (S.D.N.Y. Oct. 28, 2020) (the "SDNY Action").

40.    Dennis Hersch, individually, was the only named plaintiff in the SDNY Action.  He sought damages related to his $1.1 million limited partnership contribution in the FF Fund.

41.    Even though Linden West was not named as, and never became, a party to the SDNY Action, invoices show that the Wollmuth Law Firm and Attorney Axelrod billed the Trust for their representation of Dennis Hersch in this case.

42.    For example, Defendants charged Linden West for their preparation of the amended complaint they filed on behalf of Dennis Hersch, as well as their drafting of a memorandum in

opposition to a motion to dismiss the amended complaint. These services benefited only Dennis Hersch, to the expense of Plaintiffs as Linden West's beneficiaries.

43.    Upon information and belief, Defendants did not advise Dennis Hersch that he should be paying for legal services that benefited him in his personal capacity.

44.    Neither the Defendants nor Dennis Hersch informed Plaintiffs or the Trust's settlor that Linden West was financing a lawsuit for Dennis Hersch's individual, exclusive benefit.

45.    This and other instances of improper billing demonstrate that Defendants' professional judgment on behalf of Linden West and the Plaintiffs was adversely affected by Defendants' own financial, business or other personal self-interest in favoring Dennis Hersch as an individual client. Nevertheless, Defendants never disclosed the conflict, and neither Linden West nor Dennis Hersch gave informed consent to Defendants' conflicted representation in writing.

## H.    The Wollmuth Law Firm And Attorney Axelrod Abandon Linden West's Interest In The FF Fund's Bankruptcy, While At The Same Time Advancing Dennis Hersch's And Greg Hersch's Interests.

46.    To make matters worse, the Defendants inexplicably abandoned Linden West's $33 million claim. On January 14, 2021, debtors' counsel in the bankruptcy filed an Agreed Ex Parte Motion to Strike Linden West's claim, which was agreed to by Dennis Hersch and Linden West's counsel, the Wollmuth Law Firm and Attorney Axelrod. This filing included a December 1, 2020 notice of abandonment of Linden West's interest in the FF Fund with a cost basis of more than $33 million.

47.    Defendants knew by filing the SDNY Action only months earlier that abandoning Linden West's claim would necessarily increase Dennis Hersch's $1.1 million interest in the FF Fund.

48.     Specifically, the abandonment of Linden West's interest made Dennis Hersch's IRA the single largest holder of the FF Fund.  Dennis Hersch did not abandon his interest at the same time as he was advising Linden West to do so.  Defendants provided legal services to increase Dennis Hersch's interest by abandoning Linden West's interest.

49.     Greg Hersch was the third-largest holder in the FF Fund and did not abandon his interest in the FF Fund.

50.     Neither the Defendants nor Dennis Hersch affirmatively disclosed to Plaintiffs or other individuals associated with the Trust that Linden West's interest would be abandoned but Dennis Hersch's interests retained.  Linden West did not learn of this fact until early 2023.

**I.     The Wollmuth Law Firm And Attorney Axelrod Involve Linden West In Further Costly, Unnecessary Litigation.**

51.     Three days after their abandonment of Linden West's interest, on December 4, 2020, the Wollmuth Law Firm and Attorney Axelrod, with the assistance of Delaware counsel, filed a lawsuit in Delaware Chancery Court against Franzone and several Florence Capital SPVs (with Franzone as their member) on behalf of Dennis Hersch, both individually and in his capacity as trustee for Linden West.  See Dennis Hersch as Trustee of The Linden West Trust, et al. v. Andrew T. Franzone, et al., C.A. No. 2020-1032-SG (Del. Ch. 2020) (the "2020 Delaware Action").

52.     Having caused Linden West to effectively "write off" its investment in the FF Fund at a $33 million loss, there was no reason for Defendants to include Linden West as a party to the 2020 Delaware Action, except, upon information and belief, to justify their continued billing of the Trust for legal services that also necessarily benefitted Dennis Hersch's individual interest.

53.     Dennis Hersch and the Defendants did not confer with or inform Plaintiffs or other persons associated with the Trust about the 2020 Delaware Action.

54.     The 2020 Delaware Action was pursued for the benefit of Dennis and Greg Hersch (and others), including for the purpose of clearing Greg Hersch's name. Upon information and belief, the 2020 Delaware Action was financed, in whole or in part, by Linden West.

**J.     Defendants Continue Charging Linden West For Work Related To The Bankruptcy Action In Which Linden West No Longer Had Any Interest.**

55.     Despite abandoning Linden West's claim in December 2020, the Wollmuth Law Firm and Attorney Axelrod continued to bill the Trust for work related to the bankruptcy action well into 2021.

56.     Upon information and belief, Defendants' continued work on the bankruptcy action after the withdrawal of Linden West's claim was for Dennis Hersch's individual benefit.

57.     On January 20, 2021, for example, the Wollmuth Law Firm and Attorney Axelrod filed an objection to the adequacy of the debtors' disclosure statement and plan for Chapter 11 reorganization for "Dennis S. Hersch … ***in his individual capacity*** as the holder (through a personal individual retirement account) of a limited partner equity interest in" the FF Fund." [Emphasis added.]   Defendants charged Linden West for drafting and preparing Hersch's "individual" creditor objection.

58.      Similarly, on April 9, 2021, the Wollmuth Law Firm and Attorney Axelrod filed an opposition to the debtors' motion for a protective order on behalf of Dennis Hersch individually (though creditors represented by other counsel joined the motion).  Again, invoices reflect that they charged Linden West for drafting and preparing that opposition.

59.     Defendants also charged Linden West for their work on Dennis Hersch's reservation of rights and objection to confirmation of the debtors' first amended plans of reorganization, filed on May 7, 2021.

60.     None of these filings advanced Linden West's interests in any respect.  Indeed, they could not have, since Defendants abandoned the Trust's $33 million claim.  Consistent with the prior omissions, Defendants and Dennis Hersch did not inform Plaintiffs or others associated with the Trust that Linden West was being charged for legal services provided to Dennis Hersch individually.

61.     To the contrary, Dennis Hersch represented to others associated with the Trust that he individually was paying to pursue Franzone.

62.     Having never been informed of this situation, Linden West and the Plaintiffs necessarily did not consent to financing litigation for Dennis Hersch's benefit.

**K.     The FF Fund's CoreWeave Interest.**

63.     Also relevant to the Defendants' breach of fiduciary duty are Linden West's investments in CoreWeave, a business formerly known as Atlantic Crypto Corporation ("Atlantic Crypto").

64.     In 2018, Atlantic Crypto, a crypto Ethereum mining business, sought its first round of investment.  Florence had Linden West invest directly in Atlantic Crypto.  Atlantic Crypto was unsuccessful and therefore, in 2019, renamed itself as CoreWeave and reinvented its business into building specialized cloud infrastructure that offers GPU acceleration at scale.

65.     In addition to its direct interest in CoreWeave, Linden West held an indirect interest in CoreWeave through the FF Fund.  According to bankruptcy filings, the FF Fund purchased approximately $100 million worth of interest in CoreWeave at a $7 billion valuation.

66.     Had Linden West retained its indirect interest in CoreWeave through its investment in the FF Fund – the same interest that, in the bankruptcy action, Defendants and Dennis Hersch caused it to forever "relinquish[] … abandon[] and forfeit[]" – Linden West's portion of just the

CoreWeave interest would be worth approximately $70 million (according to Attorney Axelrod at a $7 billion valuation) and far more at CoreWeave's recent $19 billion valuation.

67.     Greg Hersch and Florence had reason to know of CoreWeave's significant and rising value.  Upon information and belief, Dennis Hersch did too.  Greg Hersch joined the CoreWeave board of directors in January 2019.  Upon information and belief, he secured this position given the magnitude of the investments made, directly and indirectly, by Linden West.  In a later arbitration action a customer brought against him for breach of fiduciary duty, fraud, and misrepresentation (also in connection with Florence's failed investments in the FF Fund), Greg Hersch would agree to settle the customer's complaint in exchange for acquiring the customer's interest in the FF Fund (and thus in CoreWeave).

68.     Under the DWMA as it existed at the time Florence advised Linden West to invest directly in CoreWeave, however, Florence had no right to collect incentive fees based on CoreWeave's performance.

**L.     In Yet Another Show Of Loyalty To Dennis Hersch – And Not To Plaintiffs – Defendants Draft And Advise Linden West To Sign A Retroactive Agreement For the Sole Purpose Of Enriching Greg Hersch And Florence.**

69.     With his health declining in 2021, Dennis Hersch, upon information and belief, sought to repair his familial relationship and ensure his son's financial future by obligating Linden West to pay Florence increased fees in connection with the CoreWeave investment.

70.     The problem, however, was that Florence had no contractual right to incentive fees arising from Linden West's CoreWeave investment.  To shore up this loophole, Dennis Hersch convinced the wife of Linden West's settlor to agree to the payment of such fees by misrepresenting CoreWeave's value as non-existent and insisting that the Trust's direct investment had little or no chance of yielding any returns.

71.     In truth though, Dennis Hersch knew that CoreWeave's value was already rising and making significant gains.

72.     Dennis Hersch also knew that the settlor's wife: (1) had no formal role in making or approving Trust expenses and investments; and (2) was not privy to information about CoreWeave or its increasing in value.  Capitalizing on his superior knowledge, sympathetic circumstances, and his trusted role, Dennis Hersch misrepresented to the settlor's wife the status and potential value of CoreWeave to mask the significant financial concession he as Trustee was making at the expense of the Trust and for the financial benefit of Greg Hersch as a way of repairing the Hersches' family dynamic.

73.     The Wollmuth Law Firm and Attorney Axelrod participated in, furthered, and worked to conceal this fiduciary breach.  Upon information and belief, Defendants knew of CoreWeave's true value based on their ongoing dealings with, and favoritism toward, Dennis Hersch.  Additionally, Defendants knew that Dennis Hersch intended to provide for his son and were willing to assist him in doing so, having no reservation about doing so at the Trust's expense. Defendants also knew that the settlor's wife did not have a formal role in approving such Trust expenses.  Upon information and belief, Defendants also knew that she only agreed to the payment of CoreWeave incentive fees as a result of Dennis Hersch's intentional misrepresentations.

74.     Rather than acting in the Trust's and the Beneficiaries' best interest by declining to effectuate or disclosing Dennis Hersch's wrongdoing, Defendants drafted the resulting contract as an amendment to the existing DWMA (the "2021 DWMA").

75.     On August 30, 2021, Dennis Hersch, on behalf of Linden West and Florence, signed the 2021 DWMA, which purported to "memorialize [the parties'] existing agreements" as to Florence's right to collect incentive fees arising from Linden West's CoreWeave investment.

76.    Of course, the 2021 DWMA did not "memorialize" any existing agreement to CoreWeave incentive fees, because Florence had no such "existing" right before Dennis Hersch's fraudulent misrepresentations.

77.    But to make it appear as if Florence did have such a preexisting right and, upon information and belief, to conceal Dennis Hersch's wrongdoing, Defendants back-dated the 2021 DWMA with an effective date of August 15, 2019.   Thus, this amendment added, retroactively, an incentive fee for CoreWeave.

78.    At the same time that they drafted the 2021 DWMA so that Florence could charge Linden West additional fees for services it had already received, with no apparent additional benefit to Linden West in return, the Wollmuth Law Firm and Attorney Axelrod advised the Trust regarding the 2021 DWMA as its counsel.

79.    And as they did with the other legal services they performed for the benefit of others (and not Linden West), Defendants invoiced Linden West for their work, essentially charging the Trust for the privilege of requiring it to pay Florence more money.

80.    On the whole, Defendants charged Linden West over $400,000 in legal fees and expenses following their abandonment of the Trust's $33 million claim in the bankruptcy action.

**M.    The Wollmuth Law Firm And Attorney Axelrod Obstruct Linden West From Receiving The Linden West Records Maintained By Dennis Hersch – And Produce Them Only After Deleting Content.**

81.    After Dennis Hersch passed away in January 2022, Matthew Zeiger was appointed as the successor trustee of Linden West.

82.    Attorney Axelrod of the Wollmuth Law Firm was appointed executor of Dennis Hersch's estate and/or served as counsel to Dennis Hersch's widow.

83.    Upon Dennis Hersch's passing, neither Greg Hersch nor Attorney Axelrod provided any of Linden West's records to Linden West's grantor or to Zeiger.

84.    Zeiger requested on several occasions for Dennis Hersch's records to be provided.

85.    It was not until May 10, 2022, nearly four months after Dennis Hersch's passing, that Attorney Axelrod finally provided Dennis Hersch's work computer, which was a computer owned by Linden West's grantor, to Zeiger.

86.    When Dennis Hersch's computer was provided, the computer had already been sanitized, with emails having been erased in advance of delivering the computer to Linden West.

87.    Neither Attorney Axelrod nor Greg Hersch provided Dennis Hersch's paper records to Linden West.

88.    Attorney Axelrod claimed that Dennis Hersch had no paper files and claims to have looked for paper files at the Hersches' Manhattan and Long Island homes.

89.    Dennis Hersch's former assistant stated that more than 20 boxes of records from Dennis Hersch's former office were moved to his Manhattan home when the office was vacated several years earlier.

90.    None of Dennis Hersch's hard copy files were ever produced to Linden West.

**N.    The SEC Sanctions Florence And Greg Hersch.**

91.    In late September, 2023, the SEC issued the SEC Sanction Order.

92.    It was as a result of the SEC Sanction Order that Linden West learned, for the first time, that Florence served as an agent and advisor for the FF Fund on non-liquid private investments, the type of investments Greg Hersch represented he did not believe were contained within the FF Fund.

93.    As explained in the SEC Order, Hersch received a fee from the FF Fund for as much **_$30,000_** and **_$43,000_** per month and served as its agent all while proposing and soliciting investments for the FF Fund to other clients to whom he owed fiduciary duties.

94.    Florence's then-effective Form ADV did not fully or fairly disclose any of these significant conflicts of interest, its dual agency, or payment arrangement with the FF Fund. Florence and Greg Hersch's omissions were continuous from January 2015 through their belated disclosure in late September 2023.

95.    And even though they began representing Greg Hersch and Florence as early as 2022, <u>see</u> paragraphs 96 to 101 <u>infra</u>, Defendants, to the extent they were aware of these matters, did not disclose Florence's conflict of interest, its dual agency, or payment arrangement with the FF Fund either.

**O.    The Wollmuth Law Firm And Attorney Axelrod Create A Further Conflict Of Interest By Representing Greg Hersch, Continuing To Conceal Dennis Hersch's Fraudulent Inducement, And Failing To Turn Over Linden West's Client File.**

96.    The Wollmuth Law Firm and Attorney Axelrod represented Linden West in litigation relating to the FF Fund, Franzone, and the Franzone bankruptcy (even after the Trust abandoned its interest), and even advised Linden West concerning the 2021 DWMA and did so through at least August 31, 2021, according to their billing records.

97.    Significantly, the Wollmuth Law Firm and Attorney Axelrod still represented Linden West up until August 8, 2024 – only a few weeks ago – when Defendants withdrew as Linden West's counsel in the still-ongoing 2020 Delaware Action.

98.    But, creating yet another conflict of interest, the Wollmuth Law Firm and Attorney Axelrod also represented Greg Hersch, including with respect to the same matters Defendants had worked on for Linden West.  In 2022, Attorney Axelrod contacted Zeiger on behalf of Greg Hersch

to discuss the Linden West DWMA, including the 2021 DWMA, regarding which he had previously furnished Linden West legal advice.

99.    Then, in the fall of 2023, Attorney Axelrod from the Wollmuth Law Firm began contacting Zeiger, on behalf of Greg Hersch and Florence, concerning Linden West's participation in a CoreWeave tender offer.

100.    Furthermore, even though Attorney Axelrod and the Wollmuth Law Firm were now intimately familiar with CoreWeave's success and the incentive-fee windfall that Dennis Hersch had fraudulently induced from Linden West for his son's benefit, Defendants did not, at any time between the signing of the 2021 DWMA and August 8, 2024, ever disclose Dennis Hersch's fraudulent misrepresentations to the Plaintiffs.

101.    Attorney Axelrod's and the Wollmuth Law Firm's simultaneous representation of Greg Hersch concerning the same matters resulted in Defendants representing differing, if not materially adverse, interests. And, as proven by the one-sided 2021 DWMA and their failure to disclose Dennis Hersch's misrepresentations in connection with the 2021 DWMA, Defendants' professional judgment on behalf of Linden West was adversely affected by Defendants' own financial, business, or other personal interest in favoring Greg Hersch as an individual client.

102.    Even so, Attorney Axelrod did not consult with Linden West or Plaintiffs concerning this conflict, and Linden West did not give informed consent in writing for Attorney Axelrod and/or the Wollmuth Law Firm to represent and advise Greg Hersch on the same matter.

103.    On January 18, 2024, Linden West demanded that the Wollmuth Law Firm turn over its Linden West client files. Such files were believed to contain communications and information as to the abandonment of the Trust's claim (as reflected in Wollmuth Law Firm's time

entries) and why the Wollmuth Law Firm pursued litigation in the name of the Trust given the abandonment of the Trust's interest.

104.    The Wollmuth Law Firm and Attorney Axelrod wrongfully failed to respond or otherwise produce its files in response to the January 18, 2024, demand.

105.    Not receiving any response, on March 21, 2024, counsel for Linden West once again requested the file.  Attorney Axelrod the same day promised delivery of the file by March 29.

106.    On March 29, Attorney Axelrod claimed he was not able to deliver the file but promised it the following week.

107.    Not hearing anything, on April 18, 2024, Linden West's counsel again requested the status of file delivery.  Attorney Axelrod stated the file was being delivered the next day, April 19.

108.    On April 19, 2024, Attorney Axelrod stated he was uploading a .pst file of emails and attachments to a sharefile.  The provided link did not work.

109.    On April 22, 2024, Attorney Axelrod stated that the materials failed to upload and that a flash drive would be delivered via FedEx the next day.  A flash drive was not received the next day.  Linden West once again demanded the records.

110.    On April 25, 2024, Attorney Axelrod confirmed the flash drive was "dispatched . . . Monday evening for Tuesday delivery" and that he was "tracking it now."  The flash drive was not received on Tuesday – or on any other date.

111.    On April 25, 2024, Attorney Axelrod provided another link, this time a working link to a substantial number of emails but no drafts, pleadings, non-email correspondence, etc.

unless included as an attachment to the emails. Linden West advised the Wollmuth Law Firm, through Attorney Axelrod, that it believed the files were incomplete.

112.    On May 6, 2024, Attorney Axelrod confirmed the produced materials consisted only of emails and represented that the emails and attachments included everything "retained." He further reported no engagement letter existed. As for the promised flash drive, Attorney Axelrod reported it was never sent.

## CLAIM FOR RELIEF

## COUNT ONE

(Breach of Fiduciary Duty Against the Wollmuth Law Firm and Attorney Axelrod)

113.    Plaintiffs reallege, incorporate, and adopt all the allegations contained in the foregoing allegations of the Complaint.

114.    An attorney-client relationship existed between Linden West and the Wollmuth Law Firm and Attorney Axelrod, and they have continuously represented the Trust on matters relating to the FF Fund.

115.    The Wollmuth Law Firm and Attorney Axelrod provided Dennis Hersch with legal services concerning the Trust and had an attorney-client relationship with Dennis Hersch in his capacity as former trustee to Linden West.

116.    The Wollmuth Law Firm and Attorney Axelrod thus owed a fiduciary duty to the beneficiary Plaintiffs, including an obligation of undivided loyalty and care, even in the absence of a direct attorney-client relationship between them. This duty included: (a) a duty of honesty and affirmative, full disclosure; and (b) an obligation to refrain from placing their interests, whether personal or financial, above those of the Beneficiaries. The confidentiality and undivided loyalty obligations owed to Plaintiffs continue beyond any termination of the engagement.

117. Despite their obligation to Plaintiffs, Defendants breached their duty of loyalty by: (a) representing interests in conflict with those of the Beneficiaries, including Dennis Hersch individually and Greg Hersch individually without providing notice to, or securing a written waiver from, Linden West; (b) placing Dennis Hersch's individual interests above those of Linden West's and the Beneficiaries, without any notice or disclosure to Linden West or the Beneficiaries; (c) placing their personal and financial interests above those of the Beneficiaries by charging Linden West attorneys' fees for legal services that exclusively benefitted others also without any prior notice, disclosure or approval; (d) while purporting to represent Linden West, acting on Florence's behalf by creating a post-facto agreement for Linden West's payment of a fee to Florence based upon the CoreWeave investment and making its effective date retroactive. This was the sixth amendment to the DWMA. Prior to this amendment, there was no incentive compensation due to Florence as to the CoreWeave investment. This amendment was made at a time when Dennis Hersch was ill, approaching the end of his life and taking steps, in derogation of his fiduciary duties, to assist Greg Hersch. The Wollmuth Law Firm and Attorney Axelrod took such action in complete disregard for Linden West's and the Plaintiffs' interests and for the benefit of Florence, not Linden West; and (e) further spurning their duty of loyalty and full disclosure upon Dennis Hersch's death by withholding and/or erasing Trust records held by Dennis Hersch, and as well as Linden West's client file, thus preventing Plaintiffs from discovering the full extent of their wrongdoing

118. By these acts, Defendants placed their self-interest above the interests of the Beneficiaries who Dennis Hersch, as trustee, should have been serving.

119. As a result of the Wollmuth Law Firm and Attorney Axelrod's breach of fiduciary duty, Linden West has been damaged in an amount to be proven at trial but in excess of $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs hereby demand judgment against Defendants the Wollmuth Law

Firm and Attorney Axelrod for the following relief:

A.    Judgment against Defendants for an award of damages in an amount to be proven

at trial in excess of $75,000;

B.    Award of Linden West's costs, expenses and attorneys' fees incurred herein;

C.    Award of post-judgment interest; and

D.    Such further relief as the Court deems proper and appropriate.


Dated: August 30, 2024                          Respectfully submitted,


/s/ *Christina Karam*
Christina Karam
PETRILLO KLEIN + BOXER LLP
655 Third Ave., 22nd Floor
New York, NY 10017
Telephone: (646) 560-5985
Email: ckaram@pkbllp.com

/s/ *Marion H. Little, Jr.*
Marion H. Little, Jr. (Ohio Bar # 0042679)
*Pro hac vice* to be filed
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215
Telephone: (614) 365-9900
Fax: (614) 365-7900
Email: little@litohio.com

*Attorneys for Plaintiffs*